**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JENNIFER PRENA, TEDRA JACKSON, STACEY CHARRAN, AND JEFFREY SPRATT, on behalf of themselves and all others similarly situated,** | |
| **Plaintiffs,** | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| **-against-** | |
| **BMO FINANCIAL CORP., AND BMO HARRIS BANK, N.A.,** | |
| **Defendants.** | |

Plaintiffs Jennifer Prena, Tedra Jackson, Stacey Charran, and Jeffrey Spratt (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, Outten & Golden LLP, and Shavitz Law Group, P.A., upon personal knowledge as to themselves, and upon information and belief as to other matters, allege as follows:

## <u>NATURE OF THE ACTION</u>

1. This lawsuit seeks to recover overtime compensation for Plaintiffs and their similarly situated co-workers who have worked as Service Managers or Teller Managers ("SMs") for BMO Financial Corp. and BMO Harris Bank, N.A. (collectively "BMO" or "Defendants") anywhere in the United States.

2. BMO is one of the 16 largest commercial banks in the United States.

3. It has over 600 branches in eight states, including branches in Illinois, Minnesota, and Wisconsin, and over 1,300 ATMs.

4. Defendants use SMs as floaters, who spend the vast majority of their time performing similar duties as non-exempt, hourly-paid, tellers and personal bankers. Many SMs

even previously worked for BMO in hourly teller positions, in which they performed duties virtually identical to those of a SM.

5.      SMs, who are classified as exempt, are required to perform non-exempt work in order to keep the branches fully staffed during their long operating hours, and to provide customers with the individualized attention Defendants require its employees to deliver.

6.      Throughout the relevant period, Defendants' policy across their branches has been to uniformly classify SMs as exempt from federal and state overtime provisions and not to pay SMs any overtime wages.

7.      Defendants regularly require SMs to work in excess of 40 hours per week.

8.      The primary duty of the SMs position is to perform non-exempt work including: working as a bank teller, working as a personal banker, performing customer service tasks, and doing operations work, such as conducting routine audits and reporting.

9.      The primary duty of the SM position does not vary among Defendants' branches.

10.     The primary duty of the SM position does not fall under any of the exemptions under federal or state overtime laws.

11.     By the conduct described in this Collective and Class Action Complaint, Defendants have violated the Fair Labor Standards Act ("FLSA"), as well as Illinois, Minnesota, and Wisconsin state laws, by failing to pay SMs, including Plaintiffs, the overtime wages that they have earned and to which they are entitled by law.

12.     Plaintiffs bring this action on behalf of themselves and similarly situated current and former employees of Defendants who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq*., and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage and hour provisions of the FLSA by Defendants that have deprived

Plaintiffs and others similarly situated of their lawfully earned wages.

13.    Plaintiffs Prena and Jackson also bring this action on behalf of themselves and similarly situated current and former employees of Defendants who live in Illinois pursuant to Federal Rule of Civil Procedure 23 to remedy violations of Illinois Minimum Wage Law, 820 Ill. Comp. Stat. § 105/1, *et seq.*, and its implementing regulations, 56 Ill. Admin. Code §§ 210.100 through 300.850 (collectively, "Illinois Wage Laws").

14.    Plaintiff Charran also brings this action on behalf of herself and similarly situated current and former employees of Defendants who live in Minnesota pursuant to Federal Rule of Civil Procedure 23 to remedy violations of Minn. Stat. Ann. § 177.21 *et seq.*, including §§ 177.25, 177.27 (collectively, the "Minnesota Wage Laws").

15.    Plaintiff Spratt also brings this action on behalf of himself and similarly situated current and former employees of Defendants who live in Wisconsin pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the Wisconsin Administrative Code, Ch. DWD 274, *et seq.* (collectively, the "Wisconsin Wage Laws").

16.    On July 9, 2014, Plaintiffs and Defendants entered into a Tolling Agreement that tolled the statutes of limitations for all FLSA and state wage and hour claims beginning July 8, 2014.

## THE PARTIES

### *Plaintiffs*

#### *Jennifer Prena*

17.    Plaintiff Jennifer Prena is an adult individual who is a resident of Countryside, Illinois.

18.     Prena was employed by Defendants from approximately February 2011 to July 2012.  During this period, she worked as an SM in Defendants' bank branch located in Westchester, Illinois.

19.     Pursuant to Defendants' policy, pattern, and/or practice, Prena regularly worked more than 40 hours in a workweek, but was not compensated for overtime hours worked.

20.     Throughout her employment with Defendants, during most weeks that Prena worked for Defendants, she typically worked four weekdays from approximately 7:45 a.m. to 6:15 or 7:15 p.m., depending on the day, and Saturdays from 7:45 a.m. to 1:15 p.m.  On average, she worked approximately 45 to 50 hours per week.

21.     Throughout her employment with Defendants, Prena regularly worked through her lunch breaks.

22.     Prena is a covered employee within the meaning of the FLSA.

23.     A written consent form for Prena is attached hereto as **Exhibit A**.

***Tedra Jackson***

24.     Plaintiff Tedra Jackson is an adult individual who is a resident of Richton Park, Illinois.

25.     Jackson was employed by Defendants from approximately October 2012 to October 2013.  During this period, she worked as an SM in Defendants' bank branch located in Bolingbrook, Illinois.

26.     Pursuant to Defendants' policy, pattern, and/or practice, Jackson regularly worked more than 40 hours in a workweek, but was not compensated for overtime hours worked.

27.     Throughout her employment with Defendants, during most weeks that Jackson worked for Defendants, she worked from approximately 7:45 a.m. to approximately 6:30 p.m. on

Mondays through Fridays, and approximately one Saturday per month from 7:45 a.m. to 1:15 p.m. On average, she worked approximately 50-60 hours per week.

28.     Jackson is a covered employee within the meaning of the FLSA.

29.     A written consent form for Jackson is attached hereto as **Exhibit B**.

*Stacey Charran*

30.     Plaintiff Stacey Charran is an adult individual who is a resident of Farmington, Minnesota.

31.     Charran was employed by Defendants from approximately August 2012 to October 2013.  During this period, she worked as an SM in Defendants' bank branch located in Lakeville, Minnesota.

32.     Pursuant to Defendants' policy, pattern, and/or practice, Charran regularly worked more than 40 hours in a workweek, but was not compensated for overtime hours worked.

33.     Throughout her employment with Defendants, during most weeks that Charran worked for Defendants, she worked from approximately 6:45 a.m. to approximately 6:15 p.m. on Mondays through Fridays, and on many Saturdays from approximately 8:45 a.m. to 12:30 p.m.  On average, she worked approximately 50-60 hours per week.

34.     Throughout his employment with Defendants, Charran regularly worked through her lunch breaks.

35.     Charran is a covered employee within the meaning of the FLSA.

36.     A written consent form for Charran is attached hereto as **Exhibit C**.

*Jeffrey Spratt*

37.     Plaintiff Jeffrey Spratt is an adult individual who is a resident of Rosemount, Minnesota.

38.     Spratt was employed by Defendants from approximately March 2013 to April 2014.  During this period, he worked as an SM in Defendants' bank branch located in River Falls, Wisconsin.

39.     Pursuant to Defendants' policy, pattern, and/or practice, Spratt regularly worked more than 40 hours in a workweek, but was not compensated for overtime hours worked.

40.     Throughout his employment with Defendants, during most weeks that Spratt worked for Defendants, he worked from approximately 7:45 a.m. to approximately 5:15 to 6:30 p.m. on Mondays through Fridays, and every other Saturday.  On average, he worked over 40 hours per week.

41.     Throughout his employment with Defendants, Spratt regularly worked through his lunch breaks.

42.     Spratt is a covered employee within the meaning of the FLSA.

43.     A written consent form for Spratt is attached hereto as **Exhibit D**.

### _Defendants_

44.     BMO Financial Corp. is the holding company for BMO Harris Bank, N.A., and is organized and exists under the laws of Delaware, with a corporate headquarters in Chicago, Illinois.

45.     BMO Harris Bank, N.A. is a corporation registered in Chicago, Illinois, and with a corporate headquarters in Chicago, Illinois.

46.     Throughout the relevant period, Defendants employed Plaintiffs and similarly situated employees within the meaning of the FLSA.  Defendants have had substantial control over Plaintiffs' working conditions and the unlawful policies and practices alleged herein.

47.     Defendants are covered employers within the meaning of the FLSA, and, at all

times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

48.     At all times relevant, Defendants maintained control, oversight and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

49.     Defendants apply the same employment policies, practices, and procedures to all SMs.

50.     At all times relevant, Defendants' annual gross volume of sales made or business done was not less than $500,000.

51.     BMO Harris Bank, N.A. is the entity listed on Plaintiffs' W-2s.

## JURISDICTION AND VENUE

52.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

53.     In addition, the Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

54.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

55.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 because BMO is headquartered there, and a substantial part of the events or omissions giving rise to the claims occurred in this district.  Defendants are subject to personal jurisdiction in Illinois.

## COLLECTIVE-WIDE FACTUAL ALLEGATIONS

56.     Plaintiffs bring their First Cause of Action, pursuant to FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated persons who work or have worked for Defendants as SMs at any branch location in the United States, on or after July 8, 2011, who

elect to opt-in to this action (the "FLSA Collective").

57.     All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

58.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective.  This pattern, practice, and/or policy includes, but is not limited to:

      a.     willfully failing to pay Plaintiffs and the members of the FLSA Collective overtime wages for hours that they worked in excess of 40 hours per workweek;

      b.     willfully misclassifying Plaintiffs and the members of the FLSA Collective as exempt from the protections of the FLSA; and

      c.     willfully failing to record all of the time that its employees, including Plaintiffs and the FLSA Collective, have worked for the benefit of Defendants.

59.     Defendants are aware or should have been aware that federal law required them to pay employees performing non-exempt duties, including Plaintiffs and members of the FLSA Collective, an overtime premium for hours worked in excess of 40 per workweek.

60.     Plaintiffs and the FLSA Collective all perform or performed the same primary duties.

61.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

## ILLINOIS CLASS ACTION ALLEGATIONS

62.     Plaintiffs Jennifer Prena and Tedra Jackson bring the Second Cause of Action, an Illinois claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of all current and former SMs who have been employed by BMO in the State of Illinois between July 8, 2011, and

the date of final judgment in this matter ("the Illinois Class").

63.     Excluded from the Illinois Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Illinois Class.

64.     The members of the Illinois Class are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is not known to Plaintiff, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

65.     Upon information and belief, the size of the Illinois Class is at least 40 individuals.

66.     Defendant acted or refused to act on grounds generally applicable to the Illinois Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Illinois Class as a whole.

67.     Common questions of law and fact exist as to the Illinois Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

(a)     whether Defendant violated the Illinois Wage Laws;

(b)     whether Defendant failed to compensate Plaintiffs Prena and Jackson and the Illinois Class for hours worked in excess of 40 hours per workweek;

(c)     whether Defendant misclassified Plaintiffs Prena and Jackson and the Illinois Class;

(b)     whether Defendants' policy of misclassifying Plaintiffs Prena and Jackson and the Illinois Class was done willfully or with reckless disregard of the law;

(c)     whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs Prena and Jackson and the Illinois Class;

(d)     what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records; and

(e)     the nature and extent of class-wide injury and the measure of damages for those injuries.

68.     The claims of Plaintiffs Prena and Jackson are typical of the claims of the Illinois Class they seek to represent.

69.     Plaintiffs Prena and Jackson and all of the Illinois Class Members work, or have worked, for Defendants as SMs.

70.     Plaintiffs Prena and Jackson and the Illinois Class Members enjoy the same statutory rights under the Illinois Wage Laws, including to be paid for all hours worked and to be paid overtime wages.  Plaintiffs Prena and Jackson and the Illinois Class Members have all sustained similar types of damages as a result of Defendant's failure to comply with the Illinois Wage Laws.  Plaintiffs Prena and Jackson and the Illinois Class Members have all been injured in that they have been under-compensated due to Defendant's common policies, practices, and patterns of conduct.

71.     Plaintiffs Prena and Jackson will fairly and adequately represent and protect the interests of the members of the Illinois Class.  Plaintiffs Prena and Jackson understand that as class representatives, they assume a fiduciary responsibility to the class to represent its interests fairly and adequately.  Plaintiffs Prena and Jackson recognize that as class representatives, they must represent and consider the interests of the Illinois Class just as they would represent and consider their own interests.  Plaintiffs Prena and Jackson understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests

over the class. Plaintiffs Prena and Jackson recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Illinois Class. Plaintiffs Prena and Jackson understand that in order to provide adequate representation, they must be informed of developments in litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify at deposition and/or trial.

72. Plaintiffs Prena and Jackson have retained counsel competent and experienced in complex class actions and employment litigation. There is no conflict between Plaintiffs Prena and Jackson and the Illinois Class Members.

73. A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The members of the Illinois Class have been damaged and are entitled to recovery as a result of Defendants' violations of the Illinois Wage Laws, as well as their common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Illinois Class Members are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. The individual plaintiff lacks the financial resources to conduct a thorough examination of Defendants' timekeeping and compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

74. This action is properly maintainable as a class action under Federal Rule of Civil

Procedure 23(b)(3).

## MINNESOTA CLASS ACTION ALLEGATIONS

75.     Plaintiff Stacey Charran brings the Third Cause of Action, a Minnesota claim,

under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class consisting

of all current and former SMs who have been employed by BMO in the State of Minnesota at

any time between July 8, 2011, and the date of final judgment in this matter (the "Minnesota

Class").

76.     Excluded from the Minnesota Class are Defendants, Defendants' legal

representatives, officers, directors, assigns, and successors, or any individual who has, or who at

any time during the class period has had, a controlling interest in Defendants; the Judge(s) to

whom this case is assigned and any member of the Judges' immediate family; and all persons

who will submit timely and otherwise proper requests for exclusion from the Minnesota Class.

77.     The members of the Minnesota Class are so numerous that joinder of all members

is impracticable.  Although the precise number of such persons is not known to Plaintiff, the

facts on which the calculation of that number can be based are presently within the sole control

of Defendants.

78.     Upon information and belief, the size of the Minnesota Class is at least 40

individuals.

79.     Defendants acted or refused to act on grounds generally applicable to the

Minnesota Class, thereby making appropriate final injunctive relief or corresponding declaratory

relief with respect to the Minnesota Class as a whole.

80.     Common questions of law and fact exist as to the Minnesota Class that

predominate over any questions solely affecting them individually and include, but are not

limited to, the following:

(a)     whether Defendants violated Minn. Stat. Ann. § 177.21 *et seq.*;

(b)     whether Defendants failed to compensate Plaintiff Charran and the Minnesota Class for hours worked in excess of 40 hours per workweek;

(c)     whether Defendants misclassified Plaintiff Charran and the Minnesota Class;

(d)     whether Defendants' policy of misclassifying Plaintiff Charran and the Minnesota Class was done willfully or with reckless disregard of the law;

(e)     whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff Charran and the Minnesota Class;

(f)     what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records; and

(g)     the nature and extent of the class-wide injury and the appropriate measure of damages for the Minnesota Class.

81.     The claims of Plaintiff Charran are typical of the claims of the Minnesota Class she seeks to represent.

82.     Plaintiff Charran and the Minnesota Class Members work, or have worked, for Defendants as SMs.

83.     Plaintiff Charran and the Minnesota Class Members enjoy the same statutory rights under Minnesota Wage Laws, including to be paid for all hours worked and to be paid overtime wages.   Plaintiff Charran and the Minnesota Class Members have all sustained similar types of damages as a result of Defendants' failure to comply with Minnesota law.  Plaintiff Charran and the Minnesota Class Members have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

84.     Plaintiff Charran will fairly and adequately represent and protect the interests of the Minnesota Class.  Plaintiff Charran understands that, as a class representative, she assumes a fiduciary responsibility to the Minnesota Class to represent its interests fairly and adequately.

- 13 -

Plaintiff Charran recognizes that as a class representative, she must represent and consider the interests of the Minnesota Class just as she would represent and consider her own interests. Plaintiff Charran understands that in decisions regarding the conduct of the litigation and its possible settlement, she must not favor her own interests over those of the Minnesota Class. Plaintiff Charran recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Minnesota Class. Plaintiff Charran understands that in order to provide adequate representation, she must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in her possession, and testify at deposition and/or trial.

85.     Plaintiff Charran has retained counsel competent and experienced in complex class action employment litigation.  There is no conflict between Plaintiff Charran and the Minnesota Class.

86.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The members of the Minnesota Class have been damaged and are entitled to recovery as a result of Defendants' violation of Minnesota Wage Laws, as well as their common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the Minnesota Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  The individual plaintiff lacks the financial resources to conduct a thorough examination of Defendants' timekeeping and compensation practices and to prosecute vigorously

a lawsuit against Defendants to recover such damages. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

87. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## WISCONSIN CLASS ACTION ALLEGATIONS

88. Plaintiff Jeffrey Spratt brings this Fourth Cause of Action, a Wisconsin claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class consisting of all current and former SMs who have been employed by BMO in the State of Minnesota at any time between July 8, 2012, and the date of final judgment in this matter (the "Wisconsin Class")

89. Excluded from the Wisconsin Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Wisconsin Class.

90. The members of the Wisconsin class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is not known to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

91. Upon information and belief, the size of the Wisconsin Class is at least 40 individuals.

92.     Defendant acted or refused to act on grounds generally applicable to the Wisconsin Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Wisconsin Class as a whole.

93.     Common questions of law and fact exist as to the Wisconsin Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

(a)     whether Defendants violated Wisconsin Administrative Code, Ch. DWD 274, *et seq.*;

(b)     whether Defendants failed to compensate Plaintiff Spratt and the Wisconsin Class for hours worked in excess of 40 hours per workweek

(c)     whether Defendant misclassified Plaintiff Spratt and the Wisconsin Class;

(d)     whether Defendants' policy of misclassifying Plaintiff Spratt and the Wisconsin Class was done willfully or with reckless disregard of the law;

(e)     whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff Spratt and the Wisconsin Class;

(f)     what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records; and

(g)     the nature and extent of the class-wide injury and the appropriate measure of damages for the Wisconsin Class.

94.     The claims of Plaintiff Spratt are typical of the claims of the Wisconsin Class he seeks to represent.

95.     Plaintiff Spratt and the Wisconsin Class Members work, or have worked, for Defendants as SMs.

96.     Plaintiff Spratt and the Wisconsin Class Members enjoy the same statutory rights under the Wisconsin law, including to be paid for all hours worked and to be paid overtime wages.   Plaintiff Spratt and the Wisconsin Class Members have all sustained similar types of

damages as a result of Defendants' failure to comply with Wisconsin law. Plaintiff Spratt and the Wisconsin Class Members have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

97. Plaintiff Spratt will fairly and adequately represent and protect the interests of the Wisconsin Class. Plaintiff Spratt understands that, as a class representative, he assumes a fiduciary responsibility to the Wisconsin Class to represent its interests fairly and adequately. Plaintiff Spratt recognizes that as a class representative, he must represent and consider the interests of the Wisconsin Class just as he would represent and consider his own interests. Plaintiff Spratt understands that in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the Wisconsin Class. Plaintiff Spratt recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Wisconsin Class. Plaintiff Spratt understands that in order to provide adequate representation, he must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in his possession, and testify at deposition and/or trial.

98. Plaintiff Spratt has retained counsel competent and experienced in complex class actions and in labor and employment litigation. There is no conflict between Plaintiff Spratt and the Wisconsin Class.

99. A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The members of the Wisconsin Class have been damaged and are entitled to recovery as a result of Defendants' violation of Wisconsin

law, as well as their common and uniform policies, practices, and procedures. Although the

relative damages suffered by individual members of the Wisconsin Class are not *de minimis*,

such damages are small compared to the expense and burden of bringing individual prosecution

of this litigation. The individual plaintiff lacks the financial resources to conduct a thorough

examination of Defendants' timekeeping and compensation practices and to prosecute vigorously

a lawsuit against Defendants to recover such damages. In addition, class treatment is superior

because it will obviate the need for unduly duplicative litigation that might result in inconsistent

judgments about Defendant's practices.

100. This action is properly maintainable as a class action under Federal Rule of Civil

Procedure 23(b)(3).

## COMMON FACTUAL ALLEGATIONS

101. Plaintiffs and the members of the FLSA Collective ("Collective Members"), and

the Rule 23 Classes ("Class Members") worked for Defendants as SMs.

102. Throughout their employment with Defendants, Plaintiffs and the Collective and

Class Members consistently worked more than 40 hours per week.

103. Defendants were aware that Plaintiffs and the Collective and Class Members

worked more than 40 hours per workweek, yet Defendants failed to pay them any overtime

compensation for any of the hours worked over 40 in a workweek.

104. Defendants did not keep accurate records of hours worked by Plaintiffs or the

Collective and Class Members. That is, although Plaintiffs and Collective and Class Members

routinely worked more than 40 hours, Defendants did not record those hours.

105. Plaintiffs' and the Collective and Class Members' primary duty was not

management.

106. Plaintiffs and the Collective and Class Members primarily performed non-exempt hourly work, including performing the duties of bank tellers and personal bankers, such as selling bank products and services, and performing operations work, such as conducting routine audits and reporting. Plaintiffs and the Collective and Class Members spent the vast majority of their time performing these non-exempt duties. These duties are the same as the duties performed by hourly-paid tellers, whom are routinely classified as non-exempt.

107. Plaintiffs and the Collective and Class Members were required to meet individual sales revenue goals that determined whether they were eligible to receive incentive compensation. Defendants evaluated Plaintiffs' and the Collective and Class Members' job performance, in part, against these individual sales revenue goals.

108. Plaintiffs and the Collective and Class Members were closely supervised by their store Branch Managers. Their Branch Managers spent the vast majority of each day in their branches, and were responsible for the overall performance of the branches and for coaching and developing bank employees.

109. Plaintiffs and the Collective and Class Members did not exercise any meaningful degree of independent discretion with respect to the exercise of their duties, and were required to follow the policies, practices, and procedures set by Defendants and their Branch Managers, as well as state and federal banking regulations. Plaintiffs and the Collective and Class Members did not have any independent discretionary authority to deviate from these policies, practices, and procedures.

110. For example, Plaintiffs and the Collective and Class Members did not have authority to (a) create or implement management policies, practices, and procedures for Defendants; (b) commit Defendants in matters having significant financial impact; (c) set

employee wages; (d) hire, fire, or promote employees; (e) perform performance evaluations that altered the condition of employment for employees; or (f) otherwise materially discipline employees without Branch Manager approval.

### FIRST CAUSE OF ACTION
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

111. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

112. Defendants have engaged in a widespread pattern and practice of violating the FLSA, as described in this Collective Action Complaint.

113. Plaintiffs have consented in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b).

114. At all relevant times, Plaintiffs and other similarly situated current and former employees were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

115. The overtime wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to Defendants.

116. Defendants are employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

117. At all relevant times, Plaintiffs were employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

118. Defendants failed to pay Plaintiffs and other similarly situated current and former employees the overtime wages to which they were entitled under the FLSA.

119.    Defendants' violations of the FLSA, as described in this Collective Action Complaint, have been willful and intentional.  Defendants' failed to make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiffs and other similarly situated current and former employees.

120.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

121.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and all other similarly situated employees have suffered damages by being denied overtime wages in accordance with 29 U.S.C. §§ 201 *et seq.*

122.    As a result of the unlawful acts of Defendants, Plaintiffs and other similarly situated current and former employees have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### (Illinois Wage Laws: Unpaid Overtime Wages)
### (Brought on Behalf of Plaintiffs Prena and Jackson and the Illinois Class)

123.    Plaintiffs Prena and Jackson reallege and incorporate by reference all allegations in all preceding paragraphs.

124.    At all times relevant, Plaintiffs Prena and Jackson and the members of the Illinois Class have been employees and Defendants have been an employer within the meaning of the Illinois Wage Laws.

125.    Plaintiffs Prena and Jackson and the members of the Illinois Class are covered by Illinois Wage Laws and accompanying regulations.

126.     Defendants employed Plaintiffs Prena and Jackson and the members of the Illinois Class.

127.     Defendants engaged in a widespread pattern, policy, and practice of violating the Illinois Wage Laws, as detailed in this Collective and Class Action Complaint.

128.     Defendants violated Illinois Wage Laws, in relevant part, by failing to pay Plaintiffs Prena and Jackson and the members of the Illinois Class as required by the Illinois Wage Laws, including Illinois Minimum Wage Law, 820 Ill. Comp. Stat. §105/1, et seq., and its implementing regulations, 56 Ill. Admin. Code §§ 210.100 through 300.850.

129.     Defendants failed to pay Plaintiffs Prena and Jackson and the members of the Illinois Class overtime for hours worked over forty in a workweek.

130.     Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs Prena and Jackson and the members of the Illinois Class.

131.     Defendants' violations of the Illinois Wage Laws have been willful and intentional.

132.     Due to Defendants' violations of the Minnesota Wage Laws, Plaintiffs Prena and Jackson and the members of the Illinois Class are entitled to recover from Defendants their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, penalties, and pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION
**(Minnesota Wage Laws: Unpaid Overtime Wages)**
**(Brought on Behalf of Plaintiff Charran and the Minnesota Class)**

133.     Plaintiff Charran realleges and incorporates by reference all allegations in all preceding paragraphs.

134.     At all times relevant, Plaintiff Charran and the members of the Minnesota Class have been employees and Defendants have been an employer within the meaning of the Minnesota Wage Laws.

135.     Plaintiff Charran and the members of the Minnesota Class are covered by Minnesota Wage Laws and accompanying regulations.

136.     Defendants employed Plaintiff Charran and the members of the Minnesota Class.

137.     Defendants failed to pay Plaintiff Charran and the members of the Minnesota Class wages to which they are entitled under Minn. Stat. Ann. § 177.21 *et seq.*, including §§ 177.25, 177.27.

138.     Defendants failed to pay Plaintiff Charran and the members of the Minnesota Class overtime for hours worked over forty in a workweek.

139.     Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff Charran and the Minnesota Class members.

140.     Defendants' violations of the Minnesota Wage Laws have been willful and intentional.

141.     Due to Defendants' violations of the Minnesota Wage Laws, Plaintiff Charran and the members of the Minnesota Class are entitled to recover from Defendants their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, penalties, and pre-judgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
### (Wisconsin Wage Laws: Unpaid Overtime Wages)
### (Brought on Behalf of Plaintiff Spratt and the Wisconsin Class)

142.     Plaintiff Spratt realleges and incorporates by reference all allegations in all preceding paragraphs.

143. At all times relevant, Plaintiff Spratt and the members of the Wisconsin Class have been employees and Defendants have been an employer within the meaning of the Wisconsin Wage Laws.

144. Plaintiff Spratt and the members of the Wisconsin Class are covered by Wisconsin Wage Laws and accompanying regulations.

145. Defendants employed Plaintiff Spratt and the members of the Wisconsin Class.

146. Defendants failed to pay Plaintiff Spratt and the members of the Wisconsin Class wages to which they are entitled under Ch. 274, *et seq.*, of the Wisconsin Administrative Code, as promulgated pursuant to Wis. St. § 103, *et seq.*, including but not limited to Ch. DWD § 274.02, Wis. Adm. Code.

147. Defendants failed to pay Plaintiff Spratt and the members of the Wisconsin Class overtime for hours worked over forty in a workweek.

148. Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff Spratt and the Wisconsin Class Members.

149. Defendants' violations of the Wisconsin Wage Laws have been willful and intentional.

150. Due to Defendants' violations of Wisconsin Wage Laws, Plaintiff Spratt and the members of the Wisconsin Class are entitled to recover from Defendant their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, penalties, and pre-judgment and post-judgment interest.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, seek the following relief:

A. That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to the Collective Members. Such notice should inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit, among other things;

B. Unpaid overtime pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

C. Certification of the state law claims case as class actions pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of Plaintiffs as Class Representatives and counsel of record as Class Counsel;

E. Issuance of a declaratory judgment that the practices complained of in this Collective Action Complaint are unlawful under appropriate state law;

F. Unpaid overtime pay, interest, and other penalties permitted by law pursuant to the Illinois Wage Laws;

G. Pre-judgment interest and post-judgment interest;

H. Appropriate equitable and injunctive relief to remedy violations, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

I. Reasonable incentive awards for the Plaintiffs to compensate them for the time and effort they have spent and will spend protecting the interests of other SMs, and the risks they are undertaking;

J. Attorneys' fees and costs of the action; and

K. Such other injunctive and equitable relief as this Court shall deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: November 14, 2014
      New York, NY

                                      Respectfully submitted,


                                      */s/ Justin M. Swartz*
                                      **OUTTEN & GOLDEN LLP**
                                      Justin M. Swartz
      Christopher M. McNerney (*pro hac vice* motion forthcoming)
      3 Park Avenue, 29th Floor
      New York, New York 10016
      Telephone:  (212) 245-1000
      Facsimile:  (212) 977-4005

      Jennifer L. Liu (*pro hac vice* motion forthcoming)
      One Embarcadero Center, 38th Floor
      San Francisco, California 94111
      Telephone:  (415) 638-8800
      Facsimile:  (646) 509-2092

      *and*

      Paul W. Mollica
      203 North LaSalle Street, Suite 2100
      Chicago, IL 60601
      Telephone:  (312) 924-4888
      Facsimile:  (646) 509-2075

      **SHAVITZ LAW GROUP, P.A.**
      Gregg I. Shavitz (*pro hac vice* motion forthcoming)
      Paolo Meireles (*pro hac vice* motion forthcoming)
      1515 S. Federal Highway
      Boca Raton, Florida 33432
      Telephone: (561) 447-8888
      Facsimile: (561) 447-8831